UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In re:                                                              Chapter 7

Harold Adamo, Jr.                                                   Case No. 14-73640-LAS
                                        Debtor.
--------------------------------------------------------------------X
Marc A. Pergament,
Chapter 7 Trustee of the Estate of Harold Adamo, Jr.
                                        Plaintiff,
                    -against-                                       Adv. Proc. No. 16-8122-CEC

Hofstra University,
                                        Defendant.
--------------------------------------------------------------------X
Marc A. Pergament,
Chapter 7 Trustee of the Estate of Harold Adamo, Jr.
                                        Plaintiff,
                    -against-                                       Adv. Proc. No. 16-8123-CEC

Fairfield University,
                                        Defendant.
--------------------------------------------------------------------X
Marc A. Pergament,
Chapter 7 Trustee of the Estate of Harold Adamo, Jr.,
                                        Plaintiff,
                    -against-                                       Adv. Proc. No. 16-8124-CEC

Brooklyn Law School,
                                        Defendant.
--------------------------------------------------------------------X


DECISION DENYING TRUSTEE'S MOTIONS FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT


APPEARANCES:

Seth M. Choset, Esq.                        Ted Berkowitz, Esq.
Marc Weingard, Esq.                         Veronique Anne Urban, Esq.
Weinberg Gross & Pergament LLP              Farrell Fritz PC
400 Garden City Plaza                       1320 RXR Plaza
Suite 403                                   Uniondale, NY 11556
Counsel for Plaintiff                       Counsel for Hofstra University

Michael A. Carbone, Esq.                    Peter Moulinos, Esq.
Zeldes, Needle & Cooper, PC                 Moulinos & Associates LLC
1000 Lafayette Blvd.                        150 East 58th Street
5th Floor                                   25th Floor
Bridgeport, CT 06604                        New York, NY 10155
Counsel for Fairfield University            Counsel for Brooklyn Law School


CARLA E. CRAIG
Chief United States Bankruptcy Judge

In these adversary proceedings, Marc A. Pergament (the "Trustee"), the chapter 7 trustee of the estate of Harold Adamo, Jr. (the "Debtor"), seeks to recover tuition payments made by the Debtor to two undergraduate universities and a graduate school for the education of his children. Specifically, the Trustee seeks to avoid pre-petition tuition payments made by the Debtor to Hofstra University ("Hofstra") and Fairfield University ("Fairfield") as pre-petition fraudulent conveyances under 11 U.S.C. §§ 548(a)(1)(B) and 544[1], and New York Debtor & Creditor Law ("NY DCL") §§ 273, 273-a, and 285.  The Trustee also seeks to avoid post-petition tuition payments made by the Debtor to Hofstra, Fairfield, and Brooklyn Law School ("Brooklyn," and together with Hofstra and Fairfield, the "Defendants") while he was a debtor in possession under chapter 11 as unauthorized post-petition transfers pursuant to § 549.

The Trustee and the Defendants have each moved for summary judgment.  The Trustee seeks summary judgment on his claims that that the pre-petition tuition payments are avoidable under NY DCL § 273-a, asserting that the Debtor did not receive reasonably equivalent value or fair consideration for the tuition payments because he was not a direct beneficiary of the tuition payments, and because he did not have a legal obligation to provide any education for his children over age 18.  The Trustee also seeks summary judgment on his claim under § 549, contending that the post-petition tuition payments made by the Debtor while he was a debtor in possession were not payments made in the ordinary course, and instead were unauthorized post-petition transfers of property of the estate. The Defendants seek summary judgment on all claims, arguing, among other things, that: (1) the pre-petition transfers are not avoidable because the Debtor received reasonably equivalent value and fair consideration in exchange; (2) the post-petition payments were not unauthorized transfers; (3) public policy does not support the avoidance of the tuition payments; and (4) even if the transfers are avoidable, the Defendants are

---

[1] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code, Title 11, U.S.C.

not initial transferees of the transfers, and are good faith subsequent transferees entitled to the protection of § 550(b).

Because the undisputed facts establish that the Debtor's children were the initial transferees of the Debtor's transfers, and that the Defendants are entitled to the good faith defense provided by § 550(b), the Trustee's motions for summary judgment are denied, and the Defendants' motions for summary judgment are granted.

## JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (H),  28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  The parties have expressly consented to entry of final judgment by this Court. (Tr.[2] at 99.)

## BACKGROUND

The following facts are undisputed or are matters of which judicial notice may be taken, except as otherwise noted.

On August 6, 2014, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. (Case No. 14-73640-LAS, ECF No. 1)  On July 13, 2016, upon motion of the United States Trustee, the case was converted to one under chapter 7, and the Trustee was appointed (Case No. 14-73640-LAS, ECF Nos. 300, 301.)  On August 17, 2016, the Trustee commenced these adversary proceedings.  The claims register reflects that 13 claims were filed against the estate totaling $21,725,063.03.  The largest claim is an unsecured claim filed by Rocco & Josephine Marini for $20,859,631.21, which is based upon a judgment entered by the United States District Court for the Eastern District of New York on April 16, 2014. (Case No. 14-73640-LAS, Claim No. 13.)

---

[2] "Tr." refers to the transcript of the hearing on these motions held on November 14, 2017.

## I. Hofstra University

The Debtor's son, Nicholas, attended Hofstra between 2009 and 2013, graduating with a Bachelor of Business Administration. (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 13, Adv. Pro. No. 16-8122-CEC, ECF No. 25; Hofstra's E.D.N.Y. LBR 7056-1 Stmt. ¶ 9, Adv. Pro. No. 16-8122-CEC, ECF No. 23-3.)  In exchange for the education provided to Nicholas, Hofstra received tuition payments.  The Trustee alleges that the tuition payments totaled $121,388 (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 24, Adv. Pro. No. 16-8122-CEC, ECF No. 25), but Hofstra contends that it received $118,480.00 (Hofstra's E.D.N.Y. LBR 7056-1 Stmt. ¶ 11, Adv. Pro. No. 16-8122-CEC, ECF No. 23-3; Hofstra E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶ 24, Adv. Pro. No. 16-8122-CEC, ECF No. 33.).

In 2015, after the Debtor filed for bankruptcy, the Debtor's other son, Andrew, enrolled in Hofstra, and was a current student of the school as of the date of these motions. (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 30, Adv. Pro. No. 16-8122-CEC, ECF No. 25; Hofstra's E.D.N.Y. LBR 7056-1 Stmt. ¶ 14, Adv. Pro. No. 16-8122-CEC, ECF No. 23-3.)  In exchange for the education provided to Andrew, Hofstra received tuition payments totaling $18,724.00. (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 42, Adv. Pro. No. 16-8122-CEC, ECF No. 25.).  Hofstra contends that the payments totaled $19,224.00 (Hofstra's E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶ 42, Adv. Pro. No. 16-8122-CEC, ECF No. 33.)

Hofstra does not dispute that the funds used for these tuition payments originated from the Debtor's pre-petition and post-petition bank accounts.  (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 24, Adv. Pro. No. 16-8122-CEC, ECF No. 25; Pergament Aff. Exs. 8-7, 20-29, Adv. Pro. No. 16-8122-CEC, ECF Nos. 24-9 through 24-18, 24-21 through 24-30; Hofstra's E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 12, 17, Adv. Pro. No. 16-8122-CEC, ECF No. 23-3.)   Hofstra contends

that the funds were first transferred to Nicholas or Andrew by being deposited into that student's school account.  (Hofstra's E.D.N.Y. LBR 7056-1 Stmt. ¶ ¶ 11, 16, Adv. Pro. No. 16-8122-CEC, ECF No. 23-3.)

In connection with these motions, Hofstra submitted an affidavit of Deborah Mulligan, Hofstra's Executive Director of Student Financial Services and the University Bursar.  Ms. Mulligan explains that payments in connection with a student's tuition are placed in that student's account with the school through Hofstra's electronic portal.  (Mulligan Aff. ¶ 7, Adv. Pro. No. 16-8122-CEC, ECF No. 23-7.) Ms. Mulligan's affidavit further explains:

> In accordance with Hofstra University policy, the student's consent is required for a parent to even see the account balance and record of payments online.  The student may register for classes at Hofstra in which case the payments in his or her student account are applied by Hofstra to the tuition balance and other University fees and charges.  Conversely, the student may choose to withdraw from Hofstra classes and obtain a refund for the payments held in the student account, in accordance with the University's Refund Policy.  When refunds are provided of non-loan-related payments, refunds will be provided directly to the student, regardless of whether the original payor of the funds was the student.  This is because payments credited to a student's account are considered credits belonging to the student, and not to a parent or other individual who may have made a payment on the student's behalf.

 (Mulligan Aff. ¶ 10, Adv. Pro. No. 16-8122-CEC, ECF No. 23-7.)

The Trustee does not dispute that the payments made by the Debtor were credited to the students' accounts (Trustee's Counter-E.D.N.Y. LBR 7056-1 Stmt. ¶11, Adv. Pro. No. 16-8122-CEC, ECF No. 36), or that the funds in the students' accounts were treated in accordance with the school policies.

II.    <u>Fairfield University</u>

The Debtor's daughter, Francesca, attended Fairfield between August 2012 and June 2015, graduating with a Bachelor of Arts Degree.  (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 13, Adv. Pro. No. 16-8123-CEC, ECF No. 25; Fairfield's E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶13, Adv. Pro. No. 16-8123-CEC, ECF No. 36; Fairfield's E.D.N.Y. LBR 7056-1 Stmt. ¶ 21, Adv. Pro. No. 16-8123-CEC, ECF No. 27-1; Trustee's E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶ 21, Adv. Pro. No. 16-8123-CEC, ECF No. 33.)  In exchange for the education provided to Francesca, the Trustee alleges that Fairfield received tuition payments totaling $112,870.00. (Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶ 22, Adv. Pro. No. 16-8123-CEC, ECF No. 25). Although Fairfield disputes the total amount of tuition payments received, it does not dispute that the Debtor contributed to Francesca's education by transferring funds to her account with the school.  (Fairfield's E.D.N.Y. LBR 7056-1 Counter- Stmt. ¶ 22, Adv. Pro. No. 16-8123-CEC, ECF No. 36.)

Fairfield also does not dispute that the funds used to make the tuition payments originated from the Debtor's pre-petition and post-petition accounts.  However, Fairfield asserts that transfers by the Debtor were made to Francesca.   Like Hofstra, Fairfield maintains an online portal in each student's name.  (Fairfield's E.D.N.Y. LBR 7056-1 Stmt. ¶ 16, Adv. Pro. No. 16-8123-CEC, ECF No. 27-1; Trustee's E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶16, Adv. Pro. No. 16-8123-CEC, ECF No. 33.)  The account belongs to the student, and the student's parents have no rights in or to the account.  (Fairfield's E.D.N.Y. LBR 7056-1 Stmt. ¶ 16, Adv. Pro. No. 16-8123-CEC, ECF No. 27-1; Trustee's E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶16, Adv. Pro. No. 16-8123-CEC, ECF No. 33.)  In the event the student is entitled to a refund, the student, and not a third party, receives the reimbursement.  (Fairfield's E.D.N.Y. LBR 7056-1 Stmt. ¶ 18, Adv.

Pro. No. 16-8123-CEC, ECF No. 27-1; Trustee's E.D.N.Y. LBR 7056-1 Counter-Stmt. ¶ 18,

Adv. Pro. No. 16-8123-CEC, ECF No. 33.)  The Trustee does not assert that Fairfield deviated

from these policies in connection with Francesca's student account.

III. Brooklyn Law School

After graduating from Fairfield in 2015, Francesca attended Brooklyn.  (Trustee's

E.D.N.Y. LBR 7056-1 Stmt. ¶ 13, Adv. Pro. 16-8124-CEC, ECF No. 24.)  In exchange for the

education provided to Francesca, and prior to the conversion of the Debtor's case to chapter 7,

Brooklyn received tuition payments totaling $27,692.42.  (Trustee's E.D.N.Y. LBR 7056-1 Stmt.

¶ 15, Adv. Pro. No. 16-8124-CEC, ECF No. 24; Brooklyn's E.D.N.Y. LBR 7056-1 Counter-

Stmt. ¶25, Adv. Pro. No. 16-8124-CEC, ECF. No. 29-2.)

Brooklyn does not dispute that the Debtor transferred funds from his post-petition

accounts to be used for Francesca's law school tuition. The payments were made to Francesca's

account with the school's electronic platform, BLS Connect.  (Brooklyn's E.D.N.Y. LBR 7056-1

Stmt. ¶¶ 12, 13, Adv. Pro. No. 16-8124-CEC, ECF No. 22-2; Trustee's E.D.N.Y. 7056-1

Counter-Stmt. ¶¶ 12, 13, Adv. Pro. No. 16-8124-CEC, ECF No. 38.)  Brooklyn "treats and

considers monies deposited into the BLS Connect for students' tuition as belonging to the

student."  (Brooklyn's E.D.N.Y. LBR 7056-1 Stmt. ¶ 16, Adv. Pro. No. 16-8124-CEC, ECF No.

22-2; Campbell Aff. ¶ 5, Adv. Pro. No. 16-8124-CEC, ECF No. 22-2; Trustee's E.D.N.Y. 7056-

1 Counter-Stmt. ¶ 16, Adv. Pro. No. 16-8124-CEC, ECF No. 38.)    If the student is entitled to a

refund, the refund is either made directly to the student or to the BLS Connect account.

(Brooklyn's E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 17, 18, Adv. Pro. No. 16-8124-CEC, ECF No. 22-2;

Trustee's E.D.N.Y. 7056-1 Counter-Stmt. ¶¶ 17, 18, Adv. Pro. No. 16-8124-CEC, ECF No. 38.)

After making the payment to Francesca's BLS Connect account, the Debtor "could not access Francesca's account to view her tuition balance or records of payment without permission from Francesca." (Brooklyn's E.D.N.Y. LBR 7056-1 Stmt. ¶ 24, Adv. Pro. No. 16-8124-CEC, ECF No. 22-2; Trustee's E.D.N.Y. 7056-1 Counter-Stmt. ¶ 24, Adv. Pro. No. 16-8124-CEC, ECF No. 38.)  Brooklyn contends that, when the Debtor transferred $4,578 to Francesca's BLS Connect account on December 14, 2015, no tuition was owed.  (Brooklyn's E.D.N.Y. LBR 7056-1 Stmt. ¶ 26, Adv. Pro. No. 16-8124-CEC, ECF No. 22-2.)

The Trustee does not dispute that the student accounts maintained by Hofstra, Fairfield, and Brooklyn functioned in the same manner: any payments received, from whatever source, were placed in the respective student's school account; funds were only applied toward tuition, and transferred to the school's general account, upon the student's registration for classes; in the even the student withdrew from the program, the student received the refund of any balance in the account.  (Tr. 12-16.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)), cert. denied, 540 U.S. 811 (2003).

"The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." <u>Rosenman & Colin LLP v. Jarrell (In re Jarrell)</u>, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted). Here, the material facts are not in dispute.

AVOIDANCE CLAIMS ASSERTED IN THE COMPLAINTS

The Trustee's claims against the Defendants to recover the pre-petition tuition payments are based on §§ 548(a)(1)(B) and 544, and NY DCL §§ 273, 273-a., and 275.  The Trustee does not allege that the transfers were intentionally fraudulent under § 548(a)(1)(A).

Section 548(a)(1)(B) authorizes a trustee to avoid a transfer of an interest in property of the debtor under a theory of constructive fraud.  That section provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C § 548(a)(1)(B).  The purpose of this provision is to set aside transactions that "unfairly or improperly deplete a debtor's assets" so that the assets may be made available to creditors.

<u>Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)</u>, 435 B.R. 866, 875 (Bankr.

S.D.N.Y. 2010) (citing 5 Collier on Bankruptcy ¶ 548.01 and In re PWS Holding Corp., 303

F.3d 308, 313 (3d Cir. 2002)).

Section 544(b) authorizes a trustee to avoid a transfer of an interest in property of the

debtor by utilizing applicable state law that permits such avoidance.  11 U.S.C. § 544(b).  Here,

the applicable law is the NY DCL.

NY DCL § 273 provides:

> Every conveyance made and every obligation incurred by a person
> who is or will be thereby rendered insolvent is fraudulent as to
> creditors without regard to his actual intent if the conveyance is
> made or the obligation is incurred without a fair consideration.

N.Y. Debt. & Cred. Law § 273.

NY DCL § 273-a provides:

> Every conveyance made without fair consideration when the
> person making it is a defendant in an action for money damages or
> a judgment in such an action has been docketed against him, is
> fraudulent as to the plaintiff in that action without regard to the
> actual intent of the defendant if, after final judgment for the
> plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a.  This section is applicable to the Debtor because Rocco &

Josephine Marini, creditors of the Debtor, commenced an action for money damages against the

Debtor on September 30, 2008, obtained a judgment on April 16, 2014 for $11,304,079, plus

interest, and the judgment is unsatisfied.  (Pergament Aff. Ex. 5, Adv. Pro. No. 16-8122-CEC,

ECF No. 24-6; Trustee's E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 2, 5, 7, 8, Adv. Pro. No. 16-8122-CEC,

ECF No. 25.)

NY DCL § 275 provides:

> Every conveyance made and every obligation incurred without fair
> consideration when the person making the conveyance or entering
> into the obligation intends or believes that he will incur debts

> beyond his ability to pay as they mature, is fraudulent as to both
> present and future creditors.

N.Y. Debt. & Cred. Law § 275.

The Trustee also seeks to avoid the Debtor's post-petition tuition payments pursuant to

§ 549(a), which provides, in pertinent part:

> [T]he trustee may avoid a transfer of property of the estate--
> (1) that occurs after the commencement of the case; and
> (2)(A) that is authorized only under section 303(f) or 542(c) of this
> title; or
>     (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

The Trustee's motions for summary judgment are limited to his claims under § 549 and

NY DCL § 273-a, which does not require a showing of insolvency. (Tr. at 11.)  The Defendants

seek summary judgment on all claims.

<u>DISCUSSION</u>

The avoidance of pre-petition tuition payments made by a debtor for the education of his

or her child is a developing body of law, and courts across the country have reached different

results.  <u>Compare</u> e.g. <u>Geltzer v. Trey Whitfield School (In re Michel)</u>, 573 B.R. 46, 48 (Bankr.

E.D.N.Y. 2017) (tuition payments for minor children were not avoidable); <u>DeGiacomo v. Sacred

Heart Univ. (In re Palladino)</u>, 556 B.R. 10 (Bankr. D. Mass. 2016) (college tuition was not

avoidable); <u>Geltzer v. Our Lady of Mt. Carmel-St. Benedict School (In re Akanmu)</u>, 502 B.R.

124 (Bankr. E.D.N.Y. 2013) (tuition payments for minor children were not avoidable);

<u>Trizechahn Gateway, LLC v. Oberdick (In re Oberdick)</u>, 490 B.R. 687, 712 (Bankr. W.D. Pa.

2013) (college tuition was not avoidable under state fraudulent conveyance law); <u>Sikirica v.

Cohen (In re Cohen)</u>, Adv. No. 07–02517–JAD, 2012 WL 5360956, at *9-10 (Bankr. W.D. Pa.

Oct. 31, 2012), <u>rev'd on other grounds</u>, 487 B.R. 615 (W.D. Pa. 2013) (college tuition was not

avoidable, but graduate school tuition was avoidable under state fraudulent conveyance law)

with <u>Slobodian v. Pa. State Univ. (In re Fisher)</u>, 575 B.R. 640 (Bankr. M.D. Pa. 2017) (complaint

to avoid college tuition survived motion to dismiss); <u>Boscarino v. Bd. of Trs. of Conn. State</u>

<u>Univ. Sys (In re Knight)</u>, No. 15-21646 (JJT), 2017 WL 4410455, at *4 (Bankr. D. Conn. Sept.

29, 2017) (college tuition was avoidable); <u>Roach v. Skidmore Coll. (Matter of Dunston)</u>, 566

B.R. 624, 636–37 (Bankr. S.D. Ga. 2017) (college tuition was avoidable); <u>Eisenberg v. Penn</u>

<u>State Univ. (In re Lewis)</u>, Adv. No. 16–0282, 2017 WL 1344622 (Bankr. E.D. Pa. Apr. 7, 2017);

<u>Gold v. Marquette Univ. (In re Leonard)</u>, 454 B.R. 444 (Bank. E.D. Mich. 2011) (college tuition

was avoidable); <u>Banner v. Lindsay (In re Lindsay)</u>, Adv. No. 08–9091 (CGM), 2010 WL

1780065, at *9 (Bankr. S.D.N.Y. May 4, 2010) (college tuition was avoidable). The courts that

have addressed this issue have considered a number of factors, including whether the child is a

minor, <u>Michel</u>, 573 B.R. 46; <u>Akanmu</u>, 502 B.R. 124; whether the tuition was for necessary

education or extracurricular activities, <u>Oberdick</u>, 490 B.R. 687;  whether the education was

primary, undergraduate, or graduate education, <u>Akanmu</u>, 502 B.R. 124; <u>Cohen</u>, 2012 WL

5360956; and whether the debtor, by making the payments, satisfied a legal or moral obligation

or other societal expectation, <u>Knight</u>, 2017 WL 4410455, <u>Michel</u>, 573 B.R. 46; <u>Akanmu</u>, 502

B.R. 124; <u>Oberdick</u>, 490 B.R. 687; <u>Cohen</u>, 2012 WL 5360956.

      Although the question whether a debtor receives fair consideration or reasonably

equivalent value in exchange for undergraduate and graduate tuition payments for adult children

is interesting, it need not be decided in the context of these motions.  Rather, the result here is

dictated by § 550, which governs a transferee's liability on an avoided transfer.

      Section 550, provides in pertinent part:

        (a) Except as otherwise provided in this section, to the extent that a
        transfer is avoided under section 544, 545, 547, 548, 549, 553(b),

> or 724(a) of [the Bankruptcy Code], the trustee may recover, for
> the benefit of the estate, the property transferred, or, if the court so
> orders, the value of such property, from--
>> (1) the initial transferee of such transfer or the entity for
>> whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial
>> transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section
> from--
>> (1) a transferee that takes for value, including satisfaction
>> or securing of a present or antecedent debt, in good faith,
>> and without knowledge of the voidability of the transfer
>> avoided; or
>> (2) any immediate or mediate good faith transferee of such
>> transferee.

11 U.S.C. § 550.

The Defendants argue that, based upon the structure of the student portals, they are not the initial transferees of the transfers. They argue that the Debtor's children were the initial transferees because, once funds are transferred to a student's account from any outside source, only that student has access to and control over the funds. The Trustee contends that the Defendants are the initial transferees because the payments were made for the purpose of paying the tuition, and the Defendants ultimately received the funds.

"The trustee of a bankrupt estate has broad powers under the Bankruptcy Code to avoid certain transfers of property made by the debtor either after or shortly before the filing of the bankruptcy petition." Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 55 (2d Cir. 1997). However, "[a]voidance and recovery of . . . transfers 'are distinct concepts and processes.'" Nisselson v. Salim (In re Big Apple Volkswagen, LLC), No. 11-11388 (JLG), 2016 WL 1069303, at *14 (Bankr. S.D.N.Y. Mar. 17, 2016) (quoting Suhar v. Burns (In re Burns), 322 F.3d 421, 427 (6th Cir. 2003)). Even if a transfer is subject to avoidance, recovery may depend

on whether the defendant is the initial transferee. "If the recipient of debtor funds was the initial transferee, the bankruptcy code imposes strict liability and the bankruptcy trustee may recover the funds." Red Dot Scenic Inc. v. Tese–Milner (In re Red Dot Scenic, Inc.), 351 F.3d 57, 58 (2d Cir. 2003) (per curiam). On the other hand, if the defendant is not the initial transferee, it may be entitled to assert a good faith defense under § 550(b). Id.

It is well established that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." Finley, Kumble, 130 F.3d at 57 (quoting Bonded Fin. Servs. v. European Am. Bank, 838 F.2d 890, 893 (7th Cir. 1988)). This requirement is satisfied when a party "may dispose of [the transferred asset] as he or she pleases such as 'invest [ing] the [whole] amount in lottery tickets or uranium stock.'" Secs. Inv'r Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (quoting Finley, Kumble, 130 F.3d at 57 (citing Bonded, 838 F.2d at 894)).

In these adversary proceedings, the undisputed facts establish that the Defendants did not exercise dominion and control over the tuition payments at the time of the Debtor made the transfers. Rather, the payments were made to the students' accounts, which were created by the student with a unique username and password.[3]  After the Debtor transferred the funds to those accounts, the Debtor was not able to access the account absent the account holder's authorization, nor were the Defendants authorized to utilize the funds.  Rather, the Defendants did not obtain dominion and control of those funds until the student registered for classes for that semester, at which point the funds would be applied towards the tuition amount due. (Tr. at 13, 16.)  In the event the student decided to withdraw from the program, the student, and not the Debtor or the Defendants, was entitled to any funds remaining in the account. (Tr. at 13, 16.)

---

[3] The funds were placed into the student's account whether the payment was made by personal check or electronic transfer. (Tr. at 14.)

Put simply, the student maintained dominion and control over the funds in the account upon the Debtor's transfer because it was the student's decision whether to enroll in classes and have the funds applied towards tuition or to withdraw from the program and have the funds refunded directly to him or her.

The Trustee argues that the Defendants' argument is undermined by the Debtor's intention to pay the tuition. In support of this argument, the Trustee points to an affidavit by the Debtor in which he swears that he "made tuition payments to Brooklyn." (Trustee's Mem. of Law in Opp'n to Brooklyn Law School's Motion for Summ. J. at 8, Adv. Pro. No. 16-8124-CEC, ECF No. 32.) However, the Debtor's intention does not change the legal conclusion that the initial transfer was actually to his children, who subsequently transferred the funds to the Defendants for their tuition. Also unpersuasive is the Trustee's argument that, had the children withdrawn from the programs, they would have given the refund to the Debtor. The children had no legal obligation to return the funds to their father. They could have chosen to take a trip or go on a shopping spree, and deal with their father's anger.

These student portals are akin to bank accounts, with the Defendants as the financial institutions maintaining those accounts. It is well established that, when funds are transferred to an account holder's bank account, the account holder, and not the financial institution, is the initial transferee. In this situation, the bank is a conduit. See Finley, Kumble, 130 F.3d at 59 ("[A] commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee within the meaning of § 550(a)(1)."); Bonded Fin. Servs., 838 F.2d at 893 ("When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded."). "[T]he mere conduit doctrine 'envisions that there

are three relevant parties: the transferor, the conduit, and a third party who receives the transferred funds from the conduit.'" McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.), 559 B.R. 41, 64 (Bankr. E.D.N.Y. 2016) (quoting Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.), 397 B.R. 1, 15 (S.D.N.Y. 2007)). This doctrine is typically invoked by a financial institution or broker as a defense to a fraudulent conveyance claim, asserting that it is not liable because it is a "mere conduit," and not an initial transferee of the property, id. (citing Bear, Stearns, 397 B.R. at 15), but fits easily into the framework of the student portal structure utilized by the defendants in these cases.

The Defendants maintained the electronic platform in which the student accounts were created, and were mere conduits in the initial transfer from the Debtor to his children. The fact that the funds were subsequently transferred from the children to the Defendants to pay their tuition obligations does not change the conclusion that the original transfer was from the Debtor to his children. See Bonded Fin. Servs., 838 F.2d at 895-896. Therefore, as subsequent transferees, the Defendants may assert the good faith defense provided by § 550(b). The Trustee does not dispute that the Defendants provided value to the children, in the form of enrollment in classes and education, in good faith in exchange for the tuition payments. To the extent the Trustee argues that, in order to invoke the good faith defenses under § 550(b), value must have been provided to the Debtor (Tr. at 80:25), he is incorrect. Bonded Fin. Servs., 838 F.2d at 897 ("The statute does not say "value to the debtor"; it says "value". . . . All of the courts that have considered this question have held or implied that value to the transferor is sufficient.").

The Second Circuit's decision in In re Red Dot Scenic, Inc., 351 F.3d 57, does not lead to a different conclusion. In that case, the sole shareholder of Red Dot Scenic, Inc. issued four checks drawn on the company's checking account payable to the defendant in payment of a

personal debt arising from the sole shareholder's purchase of the defendant's interest in the company. Red Dot Scenic, 351 F.3d at 58. After the company filed for bankruptcy, the trustee commenced an action against the defendant seeking to recover those transfers as fraudulent conveyances. Id. The defendant argued that the sole shareholder, for whose benefit the payments were made, was the initial transferee, and that the defendant was a subsequent transferee entitled to invoke the good faith defense. Id. The Second Circuit rejected that argument because "the funds moved directly from Red Dot's account directly to [him]." Id. At the time the funds were transferred to the defendant, he "could invest the whole amount as he chose." Tese-Milner v. Brune (In re Red Dot Scenic, Inc.), 29 B.R. 116, 119 (S.D.N.Y. 2003), aff'd 351 F.3d 57 (2003). In these adversary proceedings, however, the funds were not transferred directly from the Debtor to the Defendants, such that the Defendants could use "the whole amount as [they] chose." Id. Rather, the funds were transferred to the student accounts, and were transferred to Defendants from the student accounts only when, and in the event that the student decided to register for classes for that semester. Had the student decided against enrolling, the Defendants were not authorized to utilize the funds in the account.

The facts presented in these adversary proceeding are similar to those in Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890 (7th Cir. 1988). In that case, Bonded Financial Services ("Bonded") sent European American Bank (the "Bank") a check for $200,000, with a note directing the Bank to deposit this check into the account of Michael Ryan, who controlled Bonded. Bonded Fin. Servs., 838 F.2d at 891. Subsequently, Ryan instructed the Bank to debit the account by $200,000 and apply those funds to pay a loan made by the Bank to one of Ryan's other businesses. Id. Shortly thereafter, Bonded filed for bankruptcy, and the trustee sought to recover from the Bank the pre-petition payment made by Bonded as a

fraudulent conveyance under § 548(a).  Id. The Bankruptcy Court for the Northern District of

Illinois granted summary judgment for the Bank, and the district court affirmed.  Id.  Analyzing

§ 550, the district court determined that, at the time the initial $200,000 payment was made, the

Bank was not an initial transferee, but was a mere conduit, and that Ryan was the initial

transferee. Id.   In affirming the district court's decision, the Seventh Circuit explained:

> If the note accompanying Bonded's check had said: "use this check
> to reduce Ryan's loan" instead of "deposit this check into [Ryan]'s
> account", § 550(a)(1) would provide a ready answer. The Bank
> would be the "initial transferee" and Ryan would be the "entity for
> whose benefit [the] transfer was made". The trustee could recover
> the $200,000 from the Bank, Ryan, or both, subject to the rule of §
> 550(c) that there may be but one recovery. The trustee contends
> that the apparently formal difference-depositing the check in
> Ryan's account and then debiting that account-should not affect
> the outcome. In either case the Bank is the payee of the check and
> ends up with the money . . . . From a larger perspective, however,
> the two cases are different.
>
> *       *       *
>
> As the Bank saw the transaction on [the date it received the check],
> it was Ryan's agent for the purpose of collecting a check from
> Bonded's bank. It received nothing from Bonded that it could call
> its own; the Bank was not Bonded's creditor, and Ryan owed the
> Bank as much as ever. The Bank had no dominion over the
> $200,000 until  . . .  Ryan instructed the Bank to debit the account
> to reduce the loan; in the interim, so far as the Bank was
> concerned, Ryan was free to invest the whole $200,000 in lottery
> tickets or uranium stocks. As the Bank saw things on [the date it
> applied the funds to reduce the loan], it was getting Ryan's money.
> . . .  So the two-step transaction is indeed different from the one-
> step transaction we hypothesized at the beginning of this
> discussion.

Bonded Fin. Servs., 838 at 892-94 (citation omitted).  The Seventh Circuit also rejected the

trustee's argument that the Bank was the "entity for whose benefit" the transfer was initially

made because, even though the Bank was the ultimate recipient, "a subsequent transferee cannot

be the 'entity for whose benefit' the initial transfer was made." Id. at 895.   On the other hand,

"[i]f Bonded had sent a check to the Bank with instructions to reduce Ryan's loan, the Bank would have been the initial transferee and Ryan the 'entity for whose benefit'." Id.

Bonded is exactly on point.  Although the funds transferred by the Debtor to the students' accounts were ultimately received by the Defendants as tuition payments, at the time of the initial transfer by the Debtor, the Defendants' electronic system was merely holding the funds on behalf of the student account holders. The Defendants were mere conduits, and did not have dominion and control over the funds; rather, the students did.  To the extent the Trustee argues the opposite, that the students' accounts were mere conduits to the Defendants, he is incorrect.  A conduit is an entity that holds the transferred asset for the true recipient, and has no legal right to utilize the asset while in its possession. Finley, Kumble, 130 F.3d at 56-58 (adopting Bonded Fin. Servs.); Bonded Fin. Servs., 838 F.2d at 893 ("[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes.").  Here, the children had the power to withdraw from the programs and receive the funds to use as they wish.  The Defendants only received dominion and control over the funds once the students enrolled in classes and the funds were applied to the tuition bill.

CONCLUSION

For the foregoing reasons, the Trustee's motions for summary judgment are denied, and the Defendants' motions for summary judgment are granted.  Separate orders will issue.



**Dated: Brooklyn, New York**
**March 28, 2018**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**